UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLIED WASTE NORTH AMERICA, LLC AND 623 LANDFILL, INC., ) ) ) | |
| PLAINTIFFS, ) ) ) | |
| v. ) ) | CIVIL ACTION NO. |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 25, THOMAS G. MARI, INDIVIDUALLY AND AS PRESIDENT, STEVEN J. SOUTH, AS SECRETARY-TREASURER, JOAN C. COREY, AS VICE PRESIDENT/ BUSINESS AGENT, PETER S. BERRY, AS RECORDING SECRETARY, MILTON DEPINA, INDIVIDUALLY AND AS UNION REPRESENTATIVE, NICO CATANO, INDIVIDUALLY AND AS UNION TRUSTEE, ERIC LOGAN, INDIVIDUALLY AND AS UNION REPRESENTATIVE, DAVID SMITH, INDIVIDUALLY AND AS UNION REPRESENTATIVE, BRIAN J. HATCH, INDIVIDUALLY AND AS BUSINESS AGENT, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| And ) ) | |
| JOHN DOES 1-100; and all others conspiring, acting in concert, or otherwise participating with them or acting in their aid or behalf, ) ) ) ) ) | |
| DEFENDANTS. ) ) | |

## VERIFIED COMPLAINT

On July 10, 2025, Plaintiffs' large, roll-off waste collection truck was stolen from a

Roxbury yard. This incident follows closely on the heels of Defendants' 10-day, violent strike

activities and other unlawful conduct—which has not abated and is continuing.  Plaintiffs Allied Waste North America, LLC and 623 Landfill, Inc. (collectively "Republic") seek an immediate temporary restraining order and a preliminary injunction to stop this unlawful conduct, and therefore bring this Verified Complaint against the above named Defendants, as follows:

## PARTIES

1.      Republic, a Delaware corporation with its principal place of business located at 18500 N. Allied Way, Phoenix, Arizona, through its affiliates and/or subsidiaries, provides waste disposal services throughout Massachusetts.

2.      Defendant International Brotherhood of Teamsters, Local 25 ("Local 25") is a labor organization engaged in representing or acting for employee members within Massachusetts and elsewhere, through its duly authorized officers or agents, with its principal office at 544 Main Street, Boston, MA 02129-1113nai.  Local 25 represents certain commercial and residential truck drivers, mechanics, repairers, operators, helpers and specialty drivers who work for Republic.

3.      Defendant Thomas G. Mari is represented and held out by Local 25 to be its President and, upon information and belief, has personally participated in and/or ratified its unlawful conduct set forth below.

4.      Defendant Steven J. South is represented and held out by Local 25 to be its Secretary-Treasurer and, upon information and belief, has personally participated in and/or ratified its unlawful conduct set forth below.

5.      Defendant Joan C. Cory is represented and held out by Local 25 to be its Vice President/Business Agent and, upon information and belief, has personally participated in and/or ratified its unlawful conduct set forth below.

6.    Defendant Peter S. Berry is represented and held out by Local 25 to be its Recording Secretary and, upon information and belief, has personally participated in and/or ratified its conduct set forth below.

7.    Defendant Nico Catano is represented and held out by Local 25 to be its Trustee and has personally participated in and/or ratified its unlawful conduct set forth below.

8.    Defendant Milton Depina is represented and held out by Local 25 to be its Business Agent and/or Union Shop Steward and has personally participated in and/or ratified its unlawful conduct set forth below.

9.    Defendant Eric Logan is represented and held out by Local 25 to be its Business Agent and/or Shop Steward and has personally participated in and/or ratified its unlawful conduct set forth below.

10.    Defendant Brian J. Hatch is represented and held out by Local 25 to be its Business Agent and/or Shop Steward and has personally participated in and/or ratified its unlawful conduct set forth below.

11.    The remaining Defendants, John Does 1 through 100, are all others who are conspiring, acting in concert, or otherwise participating with the named Defendants or acting in their aid or behalf with respect to the unlawful conduct set forth below, including other officers and members of Defendant Local 25.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332, based on the diversity of citizenship between Republic and each of the defendants, and because the matter in controversy exceeds $75,000, exclusive of interest or costs.

13.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Complaint states a federal cause of action against the Defendants under the Norris-LaGuardia Act, 29 U.S.C. §§ 101, *et. seq.*

14.     Venue is proper in this District Court pursuant to 28 U.S.C. §1391(b) because the parties reside within this District and because substantially all of the acts complained of occurred and are threatened to continue to occur within this District.

## REPUBLIC'S LOCAL BUSINESS

15.     Republic provides waste collection, removal, and disposal services to commercial and residential customers throughout Massachusetts, including by and through its affiliates' and subsidiaries' contracts with state and federal public entities, municipalities, and private companies. Through these contracts, Republic services about 130,000 residential and 270,000 commercial and industrial customers in Massachusetts.

16.     Republic has facilities located at 109 Newbury Street, Peabody, Massachusetts ("Peabody Recycling Facility"), 300 Forest Street, Peabody, Massachusetts ("Peabody Transfer Station"), 277 Newbury Street, Peabody, Massachusetts ("Peabody Hauling Facility"), 320 Charger Street, Revere Massachusetts ("Revere Facility"), 66 Norfolk Avenue, Roxbury, Massachusetts ("Roxbury Facility"), 300 Centre Street, Holbrook, Massachusetts ("Holbrook Facility") and 22 Nightingale Avenue, Quincy, Massachusetts ("Quincy Facility"), as well as facilities at other locations in Massachusetts.  Those facilities serve as Republic employees' bases of operation.

17.     Republic employees travel to a variety of locations from these bases of operation, to perform waste removal and disposal services for Massachusetts commercial and residential customers.

18.    At the Peabody Recycling Facility and the Peabody Transfer Station, both Republic and third-party customers utilize the facility to drop off recycling waste.  The general public can directly utilize these facilities for drop off, as well.

## THE LABOR DISPUTE

19.    Republic and Local 25 were parties to a collective bargaining agreement dated July 1, 2020, that expired on June 30, 2025.  The parties engaged in bargaining a successor contract, beginning April 19, 2025.  To date, the parties have had approximately ten bargaining sessions to try to reach agreement on new contract terms.  The parties have been unable to reach agreement, to date.

20.    On July 2 and July 11, 2025, the parties engaged and met with a federal mediator to attempt to resolve the labor dispute.  The federal mediator was unable to secure an agreement.

21.    Local 25 has elected to engage in, and is engaged in, a strike.

## THE UNION'S UNLAWFUL CONDUCT

22.    On July 10, 2025, at approximately 4:35 a.m., a Republic Services roll-off truck was stolen while the driver was checking in with the scale house attendant at a third-party transfer station located at 440 Rutherford Ave, Roxbury, MA.

23.    The truck was located in an adjacent parking lot shortly after it sped from the vendor site.  None of the contents of the truck were missing when it was discovered.

24.    Plaintiffs trucks require specialized knowledge to operate, therefore only an experienced driver would likely be able to steal a vehicle in this manner.

25.    The speed with which the truck exited the vendor site, and the fact that it exited through a back entrance, suggests that the thief was someone familiar with the layout of this vendor location.

26.     This incident comes only days after Local 25 President Thomas Mari yelled at Republic General Manager Kenny Runge, words to the effect of "You think this is bad?  Wait until we ramp it up."

27.     Local 25's strike began on July 1, 2025, with picketing at various locations, including but not limited to the Peabody Hauling Facility and the Revere Facility.  Since July 1, Local 25 has expanded its picketing activities to additional locations including the Peabody Recycling Facility, the Peabody Transfer Station, and the Roxbury Facility.

28.     Defendants acting individually and in concert, have engaged in violent conduct, putting Plaintiffs' employees in fear of imminent bodily harm and imprisoned them by obstructing their free movement and access to Republic's properties, including but not limited to:

a.     On July 1, 2025, picketers holding Local 25 signs and wearing Teamsters and Local 25 t-shirts and clothing with Republic's logo swarmed a rental car and three passenger vans that were attempting to enter the Revere Facility, and obstructed their free movement and the free movement of approximately 40 Republic replacement workers and management who were trapped inside the vehicles for up to three hours.  The picketers rocked the rental car and the passenger vans, hit the vehicles with their hands and flashlights, and keyed the rental car along both sides.  Local 25 Business Agent Brian J. Hatch used a knife to slash and flatten one tire on each of the first two passenger vans, further disabling their progress.  The picketers, some with bullhorns, and at least one with a knife visible to occupants of the van, constantly screamed profanities at the vehicles' occupants, including threats, racially-charged language, and homophobic slurs like "cockblowers" and "faggot."  The picketers were yelling profanities toward Mr. Lavery, such as "[t]his is the cocksucker who didn't give you Capital wages," and "[t]his is the motherfucker who did not give you a raise." The mob also screamed threats of physical harm to passengers, including Lavery, daring them to exit the vehicles, for example, "[f]uck around and find out" and "why doesn't Kurt step out of the car, handle business man to man."  Several of the passengers believed they might be physically dragged from the vehicles by the mob.  All this occurred with while the vehicles were attempting to operate and move into the Peabody yard and occupants remained trapped inside the vehicles during the ordeal.  Defendants trapped the third passenger van for approximately three hours and placed a "make shift" barricade in front of the van comprised of buckets and two-by-four timber.  This happened in full view of the Revere police, who took no immediate action to remove the make-shift barricade.

b.     On July 3, 2025, more than 20 picketers wearing Teamsters and Local 25 t-shirts and clothing with Republic's logo rushed a 15-passenger van attempting to leave the

Peabody Hauling Facility. The picketers were physically pushing on all sides and hitting the windows with their fists and flashlights, and were rocking the van while screaming threats and homophobic slurs the same or similar to those detailed above, including "faggot" and "dyke."

c.      On various dates between July 1 and present, defendant Nico Catano, a Local 25 Trustee, screamed threats of physical harm and homophobic slurs at Republic employees and physically assaulted a Republic manager by putting his face inside the manager's vehicle, pressing his body against the manager's arm, and spraying the manager's face, neck and arm with spittle, placing him in fear of imminent bodily harm. Catano's slurs included screaming at a transgender employee "You fucking faggot!" and "You are the ugliest bitch I've ever seen!" and "You fucking pussy!" Catano further threatened a Republic Operations Manager by screaming at him: "Get out of the car, I'm going to fuck you up" and then "I'm going to beat you up, you are a piece of shit."

d.      On July 4, 2025, at a customer location, a picketer sprayed opaque white window cleaner in a driver's face

e.      On various dates between July 1 and present, Defendants have repeatedly and continuously blocked ingress and egress to/from Republic facilities for Republic's vehicles for long periods of time ranging between three hours at Revere, to 7-10 minutes for every truck trying to leave the Peabody Hauling Facility. At the Roxbury transfer station, the police and Defendants agreed that each Republic truck would be required to wait 13 minutes before leaving and another 13 minutes before entering (a total of 26 minutes of waiting time). Republic has not been able to run trucks out of the Revere Facility since July 1 because of ongoing picketing, but has been informed that if trucks did start attempting to leave and enter the Revere Facility, the police and Defendants have an agreement that Republic trucks will be required to wait 15 minutes before leaving and another 15 minutes before re-entering the site (a total of 30 minutes). These wait times leave Republic trucks as "sitting ducks" and allow picketers to increase harassment and abuse of Republic employees, and Republic trucks at greater risk for additional sabotage. Indeed, Defendants have mechanically disabled Republic's trucks while surrounding the trucks, preventing drivers from leaving their trucks and preventing trucks from free movement and access to Republic's properties. This has happened both at Republic sites, and remotely at Republic's customer sites or municipalities in which Republic employees have been attempting to operate their routes.

f.      On July 14, 2025, Local 25 Business Agent Brian J. Hatch spit into the face of a Pinkerton security guard hired to provide access security at the Revere location.

g.      This conduct is ongoing and escalating.

29.    Defendants acting individually and in concert, have barred ingress and egress to and from Plaintiffs' facilities, and otherwise prevented Plaintiffs from performing business services, including but not limited to:

    a.    As noted above, on July 1, 2025, Defendants blocked all ingress to the Revere Facility for three hours.

    b.    On July 1, 2025, Defendants jumped on the first truck attempting to exit the Revere facility to perform work that day. The picketers physically swarmed and mobbed the truck, they pulled the air hoses out of place disabling the truck in the exit way, disconnected the battery line, and disabled the air brake line. The driver did not abandon the vehicle, but the helper assigned to the truck ran from the vehicle, afraid that he would be physically attacked.

    c.    On July 2, 2025, an individual holding a Local 25 picket sign blocked a Republic truck from exiting a customer location in Quincy.

    d.    On July 3, 2025, 20 picketers surrounded a Republic truck at a customer site and, for 2 hours, blocked it from accessing the container it needed to pick up.

    e.    On July 5, 2025, a group of picketers surrounded a Republic truck on Chesterton Street in Boston, at a customer site, and prevented the driver from exiting the location for 2 hours.

    f.    On July 8, 2025, a foreign pad lock appeared on the main gate at the Roxbury facility near the area that picketers set up their tables, food, and tents.

    g.    The Holbrook and Quincy facilities were closed from July 1, 2025 to July 7, 2025. The Revere Facility opened for one day only, July 1, 2025, and has remained closed since due to the extreme violence at that site as detailed herein.

    h.    The above and below-detailed conduct, including the constant blocking conduct is ongoing and escalating.

30.    Defendants acting individually and in concert, have intentionally engaged in conduct that has resulted in unsafe vehicle operations, attempted to blind drivers' vision, block driver's vision with Teamster placards, interfere with moving vehicles, and even attempted to mob a moving vehicle so as to cause a motor vehicle accident, as detailed herein and further as follows:

a.    On multiple occasions between July 1, 2025 and present, cars with occupants identifiable as affiliated with Local 25 have gotten directly in front of Republic's trucks while the trucks are traveling at full speed on the highway. The Local 25 cars would then slam on their breaks, sometimes coming to a complete stop on the highway, causing Republic's drivers to stop suddenly and creating extremely unsafe and potentially deadly situations for Republic's drivers and other drivers on the road.

b.    On July 2, 2025, a vehicle followed a Republic truck from the Peabody Hauling Station into Boston and cut the truck off, trying to force the truck into a low clearance tunnel that could easily have caused major vehicle damage and personal injury.

c.    On multiple locations, including on July 1 at Revere and on July 7 at Roxbury, the picketers have shined flashing strobes at drivers of moving Republic vehicles to blind their vision as they attempted to operate cars, trucks and vans and held Local 25 signage on windshields to obstruct driver vision while they are operating Republic vehicles.

d.    On July 4, 2025, at a vendor site, Local 25 picketers sprayed a white cleaner-like substance on a Republic vehicle and driver who they had surrounded and blocked in place, in an attempt that appeared designed to obscure the driver's vision and/or to physically injure him so that he could not continue to operate.

e.    This conduct is ongoing and escalating.

31.    Defendants acting individually and in concert, have vandalized Republic's property, and/or have engaged in conduct causing property damage or attempted property damage to Republic's property, including but not limited to:

a.    Keying down both sides of the rental car leading the convoy into the Revere Facility on July 1, 2025.

b.    Using a knife to slash and flatten the tires of passenger vans at the Revere Facility on July 1, 2025.

c.    Sabotaging Republic's waste hauling trucks by, among other things, pulling off fuel and DEF caps, disconnecting battery lines and air brake valves, jamming a cigar in a fuel tank, and damaging the functionality of a truck's headlights.

d.    Disabling Republic vehicles in on route, in the field at customer locations by pulling air brake valves and disconnecting battery lines.

e.    This conduct is ongoing and escalating.

32.    Defendants acting individually and in concert, have screamed vulgar threats, including racial slurs, homophobic slurs, and threats of sexual assault at Plaintiffs' employees, including but not limited to:

    a.    Picketers scream constant racial slurs, including but not limited to a July 2 or 3 incident in which a picketer yelled at a replacement driver of color "Hey you fucking n****r, that's my truck!" and "Whites only" and a July 9 incident calling a female Republic employee "fucking chink," and yelling "[i]t's funny that the trash's cans smell better than your rotten pussy, you cunt!"

    b.    Defendant David Smith, and others have hurled homophobic slurs such as "faggot" and "dumb bitch dyke" daily since July 2, targeting in particular one non-binary Republic employee.

    c.    Threats of violence such as "Get out of the car, I'm going to fuck you up!" and "I'm going to beat you up!" and "I know where Tyngsboro is, I'll see you in fucking Tyngsboro faggot!" Defendant Catano further threatened a Republic Operations Manager by screaming at him: "Get out of the car, I'm going to fuck you up" and then "I'm going to beat you up, you are a piece of shit."

    d.    Picketers have regularly hurled verbal threats that they have, or intend to, sexually assault Republic employees, their wives and/or their girlfriends. Unknown members of Local 25 made threats of sexual assault such as: "There is a Teamster at home cumming all over your wife's face," "Your wife is home getting fucked by a huge Teamster dick," "Your wife is in a stable getting fucked by horses," and "You can't reach the steering wheel? I got a couple inches for you!"

    e.    This conduct is ongoing and escalating.

33.    Defendants have participated in and/or ratified the above unlawful conduct described in Paragraphs 22 through 26, by their sponsoring of the picket, condoning the picket activities, and by and through Union agents and representatives personally participating in the above-noted conduct.

34.    On July 10, 2025, Republic notified Local 25, via letter, that it must cease and desist all illegal picket activities.

35.    Republic is informed, believes, and therefore avers that Defendants intend to continue such illegal acts as described herein unless such unlawful conduct is prevented and

enjoined by this Court.  On July 5, 2025 at the Peabody Facility, Local 25 President, Mari yelled at Republic General Manager Kenny Runge, words to the effect of "You think this is bad?  Wait until we ramp it up."  Another Local 25 member told a Republic manager that "shits gonna get ugly starting next week [meaning the week of July 7] I would stay home" and that the strike was "going national, then it usually gets uglier at that point.  There's people coming in and going out from locals all over the country and in Boston."  Based on the ongoing, escalating conduct by picketers and these and other statements by Local 25 members, Republic expects the unlawful conduct to continue and to worsen.

36.    Republic has contracted with several police departments to provide police "detail" officers in an attempt to provide security at four locations: 1) a hotel in which replacement employees and managers are staying; 2) the Revere Facility; 3) the Peabody Hauling Facility; 4) the Roxbury Facility; and 5) the Win Transfer Station, at a cost of approximately $100,000, daily. The presence of these off-duty police officers has not, however, deterred the unlawful conduct described herein.

37.    In addition, Republic has called for on-duty police assistance regularly throughout the strike. Specifically, Revere and other police officers were on scene on July 1, 2025 when strikers trapped one car and three vans of replacement workers in the driveway for hours when they attempted to enter the Revere Facility.  The police presence did not deter the Local 25 unlawful conduct and  insufficient to control the picketers unlawful conduct.  Multiple drivers who have been blocked in and trapped in their trucks in Quincy have called police and have not received assistance timely or at all.  Picketers have surrounded and disabled Republic's trucks on multiple occasions and at multiple locations even though police were present and the picketers were in view of police while vandalizing the trucks.

38.    On other occasions police officers have made statements to Republic employees such as "there are just too few of us, and too many of them.  We cannot control them." On July 7, 2025, police in Quincy stated to a driver being followed, harassed, and blocked in the middle of a public street "[w]e are not going to get involved here." Another Quincy officer watched across the street, from inside a cruiser, while picketers engaged a Republic driver at a customer's location and blocked the truck's egress out of the customer parking lot.

39.    On July 7, 2025, Republic's Security Manager Jeff Swagger communicated with the Boston Police Department by phone, and in person, and was told by officers that they had inadequate resources to assist or prevent Local 25s unlawful conduct at the Roxbury Facility.

**DAMAGE TO REPUBLIC'S BUSINESS**

40.    In addition to the irreparable harm set forth herein, Republic has incurred damages, including exceptional expense engaging attempted security for its locations, as well as expenses relating to property damage and vandalism, including the slashed tires and keyed rental car, for which Republic is responsible.

41.    Republic is engaged in a highly competitive business depending on the free ingress and egress of its employees, contractors, subcontractors, suppliers, customers, visitors, invitees, officers, and the employees of Republic's contractors and subcontractors.  The actions of Defendants have impeded and prevented such free ingress and egress, impeded the ability for Republic to provide its waste collection, removal and disposal business and have damaged and will continue to damage Republic's property, Republic's goodwill with its customers, and its business interests.

42.    Due to the Revere Police being unable or unwilling to control the mob, after July 1, 2025, Republic stopped running routes out of the Revere location and started to route trucks

from the Peabody Hauling Facility. Between Revere and the Peabody locations, Republic normally runs approximately 190 trucks daily. Since July 1 when the blocking began, Republic has averaged approximately 43 routes a day, or only about 20% of normal business volume.

43.    Win Waste, an energy company with whom Republic contracts has demanded that Republic provide and pay for security services at the energy company's location due to ongoing safety concerns caused by picketers' unlawful conduct at that location. Republic has had to provide attempted private security since July 3 in order to continue contracts with Win Waste.

44.    By reason of Defendants' willful unlawful acts, intended to damage Republic's business, as described above and in the affidavits attached hereto, Republic has suffered and will continue to suffer great and irreparable damage, the amount of which cannot now be definitely ascertained by and through Defendants' continued trespasses onto Republic property and obstruction of Republic's ability to carry out its waste collection, removal, and disposal operations, as it is obligated to do, as follows:

      (a)    Republic has been and will be denied the ability to carry out operations from its facilities, and thereby denied the use of its property, as shown by the fact that it has been unable to utilize the Revere Facility since the July 1, 2025 violence there, has not run operations from the Quincy Facility and the Holbrook Facility since June 30, 2025, has had the fleet capacity at the Peabody Facility reduced by 80%, and unsuccessfully tried to open the Roxbury Facility on July 7, 2025, but had to stop in light of the picket line violence and acts of vandalism.

      (b)    As a direct result of Defendants' unlawful conduct, Republic is suffering and will continue to suffer irreparable harm through the loss of the services of its employees, agents, contractors, and invitees and loss of its goodwill and business

reputation with its customers, vendors, and with the community, at large. Defendants' unlawful conduct is causing irreparable harm to Republic's reputation in the trade for adherence to a regular schedule for timely waste collection and removal for its customers, one of its most important competitive assets.

(c)    Others desiring to engage in business with Republic, including customers and vendors, have been denied and will continue to be denied access to Republic's premises.

(d)    Defendants' unlawful acts, including threats of violence, vandalism and intimidation constitute a real and substantial danger to public peace and order, and to the physical safety of numerous individuals. Defendants' unlawful acts further pose a public health risk to the extent that Republic's customers, including individuals and municipalities that contract with Republic have been, and will continue to be, denied essential waste collection and removal services by the non-striking employees Republic as provided, who are ready, willing, and able to provide the necessary Boston-area commercial and residential waste pickup services for which Republic is responsible.

45.    Plaintiffs do not seek to stop all picketing activity; rather, Plaintiffs seeks only to enjoin Local 25's unlawful conduct.

## COUNT I

### Injunctive Relief
### 29 U.S.C. §§ 101, et seq.

46.    Plaintiffs repeat and reallege paragraphs 1 through 44, as fully set forth herein.

47.    Defendants' unlawful conduct as described above, in furtherance of the strike, is unlawful pursuant to federal and state law.

48.    Defendants' conduct will be continued, and additional unlawful conduct will be committed, unless restrained.

49.    Local 25 has ratified the unlawful conduct.

50.    Substantial and irreparable injury to Plaintiffs' property will follow, should Defendants' unlawful conduct not be restrained by this Court.

51.    As to each item of relief Plaintiffs request, greater injury will be inflicted upon Plaintiffs by the denial of relief than will be inflicted upon Defendants by the granting of relief.

52.    Plaintiffs have no remedy at law.

53.    The public officers charged with the duty to protect Plaintiffs' property are unable or unwilling to furnish adequate protection.

**COUNT II**

**Injunctive Relief**
**M.G.L. c. 214, §6**

54.    Plaintiffs repeat and reallege paragraphs 1 through 44, as fully set forth herein.

55.    Defendants have committed and have threatened to commit unlawful acts in the furtherance of their strike activity.

56.    Defendants' threatened unlawful acts and continued unlawful will be committed if not restrained by this Court.

57.    Substantial and irreparable injury to Plaintiffs' property and employees, contractors, customers, vendors and others will follow.

58.    As to each item of relief requested, greater injury will be inflicted on Plaintiffs by the denial of relief than will be inflicted upon Defendants by granting of such relief;

59.    Plaintiffs have no adequate remedy at law for the unlawful damage they have suffered and will continue to suffer, at the hands of Local 25.

60.    The public officers charged with the duty to protect Plaintiffs' property and employees are unable or unwilling to furnish adequate protection.

61.    Plaintiffs have made every reasonable effort to settle the instant Labor Dispute both by negotiation and with the aid of an FMCS mediator.

62.    Plaintiffs have suffered and/or will suffer damages as a result of Defendants' unlawful conduct.

### COUNT III

### Trespass to Chattel

63.    Plaintiffs repeat and reallege paragraphs 1 through 44, as fully set forth herein.

64.    Defendants intermeddled with and/or took possession of Plaintiffs' property, as set forth above.

65.    As a result of Defendants' unlawful conduct, bodily harm resulted to an individual employee, over whom Plaintiff has a responsibility to furnish a safe workplace.

66.    As a result of Defendants' unlawful conduct, harm and/or damage resulted to Plaintiffs' property.

67.    Plaintiffs suffered damage as a result of the trespass upon its property.

### COUNT IV

### Nuisance

68.    Plaintiffs repeat and reallege paragraphs 1 through 44, as fully set forth herein.

69.    Defendants caused a substantial and unreasonable interference with the use and enjoyment of Plaintiffs' property when they unlawfully trespassed, picketed and blocked ingress and egress from the Plaintiffs' Revere facility.

70.     Defendants deprived the Plaintiffs of the exclusive right to enjoy the use of the Revere Facility to carry on their business operations.

71.     Defendants conduct was substantially detrimental to the reasonable use and value of the property.

72.     The gravity of the harm Defendants caused outweighs the utility of the Defendants' conduct.

73.     It would have been practicable for Defendants to conduct a lawful picket and thereby avoid the harm, in whole or in part, without undue hardship.

74.     Defendants could effectively achieve their main objection to lawfully picket in such a way that the harm to others would be substantially reduced or eliminated.

75.     Plaintiffs have suffered damages as a result of Defendants' unlawful nuisance.

## COUNT V

## Massachusetts Civil Rights Act ("MCRA"), G.L. c. 12, § 11I.

76.     Plaintiffs repeat and reallege paragraphs 1 through 44, as fully set forth herein.

77.     Defendants have interfered with, or attempted to interfere with, Plaintiffs' exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth.

78.     Defendants' interference or attempted interference was done by threats, intimidation and/or coercion.

79.     Plaintiffs have suffered damages as a result of Defendants' unlawful interference with their constitutional rights.

WHEREFORE, Republic prays this Honorable Court for the following relief:

1.     That this Honorable Court enter a decree temporarily until hearing, and preliminarily and permanently thereafter, enjoining Defendants, individually and collectively, the members of Defendant Local 25, their officers, agents, servants, representatives and employees, and any other persons acting in concert with them or otherwise participating in their aid, and anyone receiving notice of the decree, from doing the following acts or any one of them:

(a)     Preventing or attempting to prevent by blocking, violence, intimidation, or coercion, or any threats thereof, any person or persons having lawful business from freely entering or leaving all and any Republic facilities.  This includes physically menacing and threatening Republic employees, vendors, and customers by following them to work locations, following them to parked cars, screaming threats to physically assault them, and menacing their vehicles as they enter and exit Republic facilities so as to put the occupants in imminent fear of bodily harm.

(b)     Physically threatening/intimidating contractors, subcontractors, suppliers, customers, visitors, invitees, officers, employees and the employees of Republic's contractors and subcontractors.

(c)     Threatening employees, customers, potential customers, and other persons seeking to do business with Republic with physical harm, race-based harm, gender-based harm, or sexual violence should they enter and/or attempt to exit Republic's property or do business with Republic;

(d)     Interfering with, hindering, or obstructing by blocking or violence, intimidation, or coercion, or any threat thereof, the use of Republic's property or the conduct, maintenance, or operation of Republic's business;

(e)    Picketing in such a manner as to block or interfere in any way with the use of such entrance by persons desiring to enter or leave said premises on foot or by vehicle;

(f)    Congregating, loitering, or gathering within 1,000 feet of the entrance to the Republic's facilities, including blocking ingress or egress of any and all trucks exiting from and entering onto Republic's Revere Facility, Peabody Recycling Facility, Peabody Hauling Facility, Peabody Transfer Station, Roxbury Facility, Quincy Facility and/or Holbrook Facility.  This would include a prohibition on standing in front of vehicles and/or in their path of travel to prevent movement, mobbing vehicles to impede travel, physically vandalizing vehicles by slashing tires, pulling air hoses, disconnecting battery lines or other acts of vandalism resulting in vehicles being unable to operate

(g)    Trespassing upon Republic's facilities;

(h)    Ordering, commanding, directing, assisting, aiding, or abetting in any manner whatsoever any person or persons who attempt to violate or who violate this order;

(i)    Following, either by foot, or by vehicle, Republic's officers, agents, representatives, employees, independent contractors, or the employees of independent contractors, customers or prospective customers so as to interfere – expressly or by implication – with Republic business operations (including, but not limited to the express examples below) or attempting to intimidate them with threatening words or conduct – express or implied – because of their current or future relationship with Republic;

(j)    Following and/or engaging with Republic trucks or vehicles, while in operation, in a dangerous, unsafe, reckless or improper manner so as to create a public safety hazard, including using personal or union vehicles as weapons, so-called brake jobs slamming on brakes in front of Republic vehicles in an unsafe manner, swerving into the path of moving

vehicles, cutting off trucks, swerving as if to cause collisions with trucks and/or attempting to drive trucks off the road or into hazardous road areas.

(k)    Following Republic trucks to customer locations and either blocking dumpsters and/or trash/recycling cans, or blocking ingress and egress so as to prevent Republic employees from performing services;

(l)    Inflicting any physical damage or violence upon real or personal property owned by Republic or used in the regular business operation of the Company.

2.    That this Honorable Court order the Chiefs of Police of Revere, Peabody, Quincy, Boston, Saugus, and Holbrook, with the assistance of the State Police, together with those persons lawfully appointed and deputized by them, to use all power vested in them under the law to ensure full compliance with the terms of the Order.

3.    That this Honorable Court order the individual Defendants and officers and agents of the Local 25 to communicate or cause to be communicated forthwith to all members, agents, and employees of Local 25 and any others acting in concert with Local 25, by means reasonable calculated to insure receipt thereof, the fact that an Order has been entered by this Honorable Court, effective immediately, and the contents of said order, and order all members of Local 25 and those acting in concert with them to honor and obey the said Order.

4.    That Republic be awarded compensatory money damages for property damages, loss of business, and all other expenses arising out of or resulting from tortious conduct of the Defendants;

5.    Punitive damages; and

6.    Such other relief as this Court may deem reasonable and just under the circumstances, including court costs, reasonable attorneys' fees and punitive damages.

Respectfully submitted,

**ALLIED WASTE NORTH AMERICA, LLC AND 623 LANDFILL, INC.**

By their Attorneys,


*/s/ Jillian S. Folger-Hartwell*
Jillian S. Folger-Hartwell (BBO#658240)
LITTLER MENDELSON P.C.
One Financial Plaza, Suite 2205
Providence, RI 02903
Telephone: 401.824.2500
Facsimile: 401.454.2969
jfolgerhartwell@littler.com

Ellen E. Lemire (BBO#670994)
LITTLER MENDELSON P.C.
One International Place, Suite 2700
Boston, MA 02110
Telephone: 617.378.6000
Facsimile: 617.737.0052
Dated:  July 14, 2025                elemire@littler.com

## **VERIFICATION**

I, Kurt Lavery, being duly sworn, hereby declare under the penalties of perjury as follows:

I am employed by Republic Services as the Market Vice President for the Northeast Area. I have read the Verified Complaint herein.  I certify that the statements set forth in this instrument are true and correct of my own knowledge, or knowledge I have based on the business records held by my employer, or as otherwise stated on information and belief.


*/s/ Kurt Lavery*
Kurt Lavery

## <u>CERTIFICATE OF SERVICE</u>

I, Jillian S. Folger-Hartwell, hereby certify that, on this 14th day of July, 2025, a true copy

of the foregoing document was served on the below via email as follows:

Michael Feinberg, Esq.
Feinberg, Dumont & Brennan
177 Milk Street – Suite 300
Boston, Massachusetts 02109
617-338-1976
617-338-7070 (fax)
maf@fdb-law.com

Mr. Thomas Mari
President/Principal Officer
Teamsters Local 25
544 Main Street
Boston, Massachusetts 02129
tmari@teamsterslocal25.com

*/s/ Jillian S. Folger-Hartwell*
Jillian S. Folger-Hartwell
