# Exhibit A

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| WASTE MANAGEMENT OF NEVADA, INC., | | Case No. 3:18-CV-00539-LRH-WGC |
| | Plaintiff, | ORDER |
| v. | | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL UNION 533, | | |
| | Defendant. | |

Plaintiff Waste Management of Nevada, Inc. ("Waste Management") has filed an emergency motion for a temporary restraining order ("TRO") prohibiting defendant International Brotherhood of Teamsters, Local Union 533 (the "Union") from engaging in a strike or otherwise participating in any activity that would disrupt its business. (ECF No. 3). For the reasons stated below, the Court grants the request for a TRO.

**I. Factual Background**

This action arises out of a dispute between Waste Management and the Union concerning recent guidelines that Waste Management issued regarding union members' lunch breaks. On July 20, 2018, Waste Management issued the "Meal and Break Guidelines for NCN Collections Truck Drivers" ("Meal and Break Guidelines") that explained the process by which drivers should take their lunch breaks. (ECF No. 3 at 5). At issue is one provision of the Meal and Break Guidelines that requires truck drivers to keep their OBU in their trucks during their lunch breaks. (*Id.*) An OBU is an electronic device that allows for truck drivers to log their lunch breaks while on their

1

collections route. (*Id*.) Under the terms of the Collective Bargaining Agreement ("CBA"), all Union members are required to take a thirty-minute unpaid lunch break around the halfway point of their shift. (ECF No. 3-1 at 17).

In September and October 2018, Gary Watson, the Union's president, asked William Keast, the labor relations manager for Waste Management, to post a written retraction of the Meal and Break Guidelines. (ECF No. 3 at 6). Keast declined to do so. (*Id*.) On October 12, 2018, Watson posted a letter at Waste Management's facilities stating that "the [Meal and Break Guidelines] are not valid nor are they implemented and cannot be used to apply discipline." (ECF No. 3-1 at 44). On October 19, 2018, Waste Management provided notice to its Union employees and the Union that failure to comply with the Meal and Break Guidelines would result in discipline, up to and including termination. (ECF No. 3 at 6). Waste Management has estimated that at the Union's behest, approximately 65 Union employees failed to follow the Meal and Break Guidelines between October 30 and November 5, 2018. (*Id*. at 7).

On October 31, 2018, Watson told Keast during a conversation between the two that the Union would strike if Waste Management disciplined any of its employees for violating the Meal and Break Guidelines. (ECF No. 3-1 at 4). The same day, Watson sent an email to the Mayor of Reno and the City Council members informing them that because of the "bad faith bargaining on behalf of [Waste Management]…there is a good possibility of a strike which may affect the citizens of Reno [if Waste Management disciplines Union employees for not following the Meal and Break Guidelines]." (*Id*. at 46). Watson also stated that the Union was "taking the situation very seriously," and that it was "concerned for the safety and health of the public that may be at risk [in the event of a strike]." (*Id*.) The following day, Keast spoke to Micheal E. Langton, attorney for the Union, who informed him (Keast) that the Union was considering a strike if Waste Management disciplined any Union employee for not abiding by the Meal and Break Guidelines. (*Id*.) On November 2, 2018, Watson confirmed to Keast that he was instructing his Union members to not abide by the Meal and Break Guidelines and that if any employee is disciplined for not following them, the Union would strike. (*Id*.) That same day, Waste Management filed a formal grievance against the Union for allegedly violating the CBA. (ECF No. 3 at 8–9).

2

On November 7, 2018, the Union held a meeting and informed the attendees that it wanted to go on strike because of Waste Management's new Meal and Break Guidelines, specifically the provisions concerning the OBUs. (ECF No. 3-3 at 2).[1] The Union's stated plan was to strike for six days to ensure that every one of Waste Management's customers in Northern Nevada was affected. (*Id.*) The Union also allegedly told employees to complain about truck safety so that the Union could use the complaints as support for a strike. (ECF No. 3-4 at 2). From November 6 to November 8, 2018, David B. Dornak, attorney for Waste Management, exchanged correspondences with Langton regarding the Union's strike stance. (ECF No. 3 at 10–12). Summarized, Dornak repeatedly asked Langton if the Union planned to strike, but Langton only replied that a strike was a "possibility." (*Id.*).

## II. Discussion

Waste Management has requested a TRO prohibiting the Union from (1) "[c]ausing, encouraging, or participating in any strike, sympathy strike, slow-down, picketing, or any other activity which would tend to interfere with the orderly operations of Waste Management's business," and (2) [f]ailing to comply with the established grievance and arbitration procedures within the [CBA] between Waste Management and the Union." (ECF No. 3 at 2). TROs are governed by Federal Rule of Civil Procedure 65(b), which states that the moving party must provide specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for a preliminary injunction can be heard. *Ditech Financial LLC v. American West Village II Owners Association*, 2017 WL 3610559, at *2 (D. Nev. Aug. 22, 2017) (citing Fed. R. Civ. P. 65(b)). Although a TRO can be issued without notice to the adverse party, in this case, Waste Management has provided sufficient notice to the Union by filing its complaint (ECF No. 1), faxing a copy of its TRO motion to Langton on the same date

---

[1] In support of this contention, Waste Management attached an affidavit from Raeann Booth, a route manager. Booth's sworn affidavit states that she learned of the details of the meeting through a driver who attended and requested anonymity because of a fear of retaliation. (ECF No 3-3 at 2). Waste Management also submitted an affidavit from Pavlos Katsimbras, a fleet supervisor, who stated that six different technicians approached him the day after the meeting and told him about the Union's intent to strike. ECF No. 3-4 at 2).

3

that it filed the motion with the Court, and leaving a telephone message for Langton. (ECF No. 3-6 at 2).

Pursuant to the Norris-LaGuardia Act, Federal Courts do not have jurisdiction to issue a TRO or any type of injunction in any labor dispute that would prevent union members from striking. 29 U.S.C.A. §104(a). But in *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970) (hereinafter "*Boys Markets*"), the Supreme Court created an exception where Federal Courts could enjoin union members from striking where the CBA includes a no-strike provision and a provision mandating that disputes be settled through binding arbitration. *Id*. at 237. Thus, injunctive relief is available in such scenarios if the moving party can demonstrate that (1) the CBA contains a mandatory arbitration provision; (2) the underlying dispute is arbitrable; (3) the party seeking arbitration is prepared to arbitrate; and (4) issuance of the TRO would be warranted under the ordinary principles of equity. *Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency*, 89 F.3d 629, 632 (9th Cir. 1996) (citing *Boys Markets*, 398 U.S. at 254). The "ordinary principles of equity" are well established; the moving party must demonstrate (1) irreparable harm to it; (2) the balance of equities weighs in its favor; (3) an injunction (or TRO in this case) is in the public's interest, and (4) the likelihood of success on the merits. *Winter v. Natural Resources Defense Counsel, Inc.*, 555 U.S. 7, 20 (2008).

After reviewing Waste Management's complaint and its attached exhibits and affidavits, the Court concludes that it meets the requirements for a *Boys Markets* TRO. Article 12 of the CBA prohibits the Union from all manner of striking and Waste Management from locking out the union workers; this provision allows a potential TRO in this case to meet the threshold requirement of a *Boys Markets* TRO. (ECF No. 3-1 at 27). The language of the CBA also explicitly requires binding arbitration. Article 12 of the CBA also provides that if either party has any complaint, it must file the grievance in writing with the opposing party within ten days of the occurrence of the underlying issue. (*Id*.) If the parties are unable to come to an agreement within ten days of receiving a written complaint, then the complaining party must request binding arbitration. (*Id*.) Moreover, the dispute over the Meal and Break Guidelines is arbitrable, as it involves an interpretation of Article 5, Section 5 of the CBA, which concerns employees' break and lunch periods. (*Id*. at 17). Finally,

4

1    Waste Management has indicated a definite intent to arbitrate the dispute, as not only did it file a
2    formal grievance against the Union on November 2, 2018 (thus initiating the arbitration
3    machinations as described above), but it repeatedly stated in its motion that it is ready to arbitrate
4    the Union's complaints. (ECF No. 3 at 20–21).
5         Turning to the principles of equity, the Court finds that each of the factors weigh in favor
6    of granting Waste Management's TRO. As it states in its petition, Waste Management could very
7    well suffer irreparable harm following a Union strike due to a loss of customer goodwill, a harm
8    that courts have found to be sufficient because the damages from such a loss are often hard to
9    compute. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). *See also Ferrero v.
10   Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991). Waste Management would
11   obviously lose substantial customer and general public goodwill as a result of garbage piling up
12   for a week (or longer) without being collected. Additionally, as Waste Management has contracts
13   with many governmental and private entities, not disposing of the waste as agreed upon would
14   open it up to fines and potential lawsuits for breach of contract. (ECF No. 3 at 21); *see Hilde Const.
15   Co. v. International Union of Operating Engineers, Local No. 400*, 499 F. Supp. 971, 975 (D.
16   Mont. 1980) (finding irreparable injury where a strike would shut down the employer's operations
17   and cost it thousands of dollars per day). In terms of balancing the hardships, in contrast to the
18   irreparable harms that Waste Management would likely suffer, the Union and its members would
19   suffer little harm in being required to abide by the Meal and Break Guidelines pending a ruling by
20   an arbitrator. Waste Management is also likely to succeed on the merits of its claim because the
21   case law is clear – when a CBA contains a mandatory arbitration provision, as it does here, the
22   court must order the parties to arbitrate so long as the dispute is arbitrable. *Hilde Const. Co.*, 499
23   F. Supp. at 974–75 (citing *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers
24   Union, AFL-CIO*, 430 U.S. 243, 249–50 (1976); *Amalgamated Clothing and Textile Workers
25   Union v. Ratner Corp.*, 602 F.2d 1363, 1371 (9th Cir. 1979)). As the Court explained in the
26   previous paragraph, there is a mandatory arbitration provision, and the dispute is arbitrable.
27        Most concerning to the Court, however, is the threat to public health if Waste Management
28   is unable to collect waste for at least a week. It is axiomatic that the presence of raw garbage and

other hazardous waste presents a substantial risk to public health, especially when it goes uncollected for a lengthy period of time. The danger is especially prevalent in sensitive areas, such as schools, restaurants, medical facilities, residential communities, and public parks. The Union apparently recognizes the danger of uncollected waste, as in his letter to the Mayor of Reno and its City Council, Watson mentions how the Union is "concerned for the safety and health of the public that may be at risk" if Waste Management's union employees fail to collect and dispose of waste. (ECF No. 3-1 at 46).

Based on the evidence that Waste Management has submitted to the Court, the Court finds that it has met every element of the *Boys Markets* test and the Court thus has the jurisdiction to grant a TRO. Therefore, the Court will grant its motion for a TRO.

### III. Conclusion

**IT IS THEREFORE ORDERED** that Waste Management's motion for a temporary restraining order (ECF No. 3) is **GRANTED**. The Union is **ENJOINED** from causing, encouraging, or participating in any strike, sympathy strike, slow-down, picketing, or any other activity which would tend to interfere with the orderly operations of Waste Management's business. The Court will be in contact with counsel for the parties to schedule a hearing on Waste Management's motion for a preliminary injunction (ECF No. 2).

**IT IS SO ORDERED.**

DATED this 14th day of November, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

6