UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLIED WASTE NORTH AMERICA, LLC AND 623 LANDFILL, INC., <br><br>    PLAINTIFFS, <br><br>v. <br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 25; THOMAS G. MARI, INDIVIDUALLY AND AS PRESIDENT; STEVEN J.SOUTH, AS SECRETARY-TREASURER; JOAN C. COREY, AS VICE PRESIDENT/BUSINESS AGENT; PETER S. BERRY, AS RECORDING SECRETARY; MILTON DEPINA, INDIVIDUALLY AND AS UNION REPRESENTATIVE; NICO CATANO, INDIVIDUALLY AND AS UNION TRUSTEE; ERIC LOGAN, INDIVIDUALLY AND AS UNION REPRESENTATIVE; DAVID SMITH, INDIVIDUALLY AND AS UNION REPRESENTATIVE <br><br>and <br><br>JOHN DOES 1-100; and all other conspiring, acting in concert, or otherwise participating with them or acting in their aid or behalf, <br><br>    DEFENDANTS. | CIVIL ACTION NO. 1-25-cv-11990 |

## OPPOSITION TO PLAINTIFFS' THIRD RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

As the eminent philosopher Yogi Berra once observed, "It's like déjà vu all over again."

In response to Plaintiffs Allied Waste North America, LLC and 623 Landfill, Inc.'s. ("Republic

Services," "Republic," or "Company") now third attempt to enjoin Teamsters Local 25's ("Union")

picketing activity, the above-captioned Defendants file this Opposition. Defendants incorporate by

reference all previous arguments and factual assertions. Because none of the salient facts and circumstances have changed, the same result is warranted. As it has done twice before, the Court should deny Plaintiffs' request for extraordinary relief.

## INTRODUCTION

After two failed attempts, and based on substantively identical allegations, Republic is once again asking this Court to tilt the scales of a labor dispute in its favor by issuing an injunction. Just as before, however, Republic has failed to meet the exacting jurisdictional requirements for injunctive relief under the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq ("NLA" or "the Act").[1]

First, as a matter of law, Republic cannot obtain an injunction. Under Section 8 of the NLA and well-established law, complainants cannot obtain injunctions in labor disputes unless they have made every reasonable effort to settle the dispute. 29 U.S.C. § 108; *see also Donnelly Garment Co. v. International Ladies' Garment Workers' Union*, 99 F.2d 309 (8th Cir.), cert. denied, 305 U.S. 662 (1938); *L. L. Coryell & Son v. Petroleum Workers Union*, 19 F. Supp. 749, (D. Minn. 1936); *Terrio v. S. N. Nielsen Constr. Co.*, 30 F. Supp. 77 (D. La. 1939); *People ex rel. Sandnes v. Sheriff of Kings County,* 299 N.Y.S. 9 (N.Y. Sup. Ct. 1937); *Stalban v. Friedman*, 19 N.Y.S.2d 978 (N.Y. App. Div. 1940); *Brayer v. Charton*, 37 N.Y.S.2d 326 (N.Y. Sup. Ct. 1942); *Bulkin v. Sacks*, 31 Pa. D. & C. 501 (Pa. C.P. 1938).

---

[1] The Union disputes any allegation that the Union committed any unlawful acts or that such acts will continue unless restrained. The Company realleges acts from July 2 and July 23, which were previously alleged as support for its two prior injunction requests. Insofar as the Third Renewed Motion contains any new allegations, the Union vehemently denies those allegations and will demonstrate their falsity during the evidentiary hearing. Just as the Company failed to perform basic fact-checking previously, which led to, among other things, erroneously identifying a non-member as Business Agent Brian Hatch, who it then accused of criminal conduct, the Company's renewed motion appears to contain the same level of disregard for the truth. *See also* 29 U.S.C. § 106 (court cannot issue injunction in labor dispute "except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.").

Consistent with the policy goals of the Act,[2] Section 8 effectively turns the unclean hands doctrine into federal law, preventing employers from using the courts as a lever to diminish labor's bargaining power. *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 488 F.3d 11, 15 (1st Cir. 2007) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933)) ("He who comes into equity must come with clean hands.").

Applying that standard here, Republic cannot obtain an injunction. The record shows that Republic is looking for an injunction to avoid making all reasonable efforts to end the dispute— as a shortcut to satisfying its bargaining obligations. Since the strike began on July 1, 2025, Republic has repeatedly rejected opportunities to engage in contract settlement discussions. Republic has violated the National Labor Relations Act by bargaining in bad faith, *see* Def. Ex. 1, and has refused to come to the bargaining table since July 18.

In fact, the Company refused to bargain despite the *entire* Massachusetts Congressional Delegation *and* Governor Maura Healey imploring the Company's President, Jon Vander Ark, to meet with the Union. Def. Ex. 2-3. As noted in the Governor's letter, Republic refused to even return her calls. *See* Def. Ex. 2.

While Section 8 requires companies to make *all reasonable efforts* to settle a labor dispute

---

[2] 29 U.S.C. § 102 provides:

 In the interpretation of this Act and in determining the jurisdiction and authority of the courts of the United States, as such jurisdiction and authority are herein defined and limited, the public policy of the United States is hereby declared as follows:

> Whereas under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; therefore, the following definitions of, and limitations upon, the jurisdiction and authority of the courts of the United States are hereby enacted.

before being able to obtain an injunction, Republic has actively refused to make any effort at all. So, as a threshold matter, Republic cannot obtain injunctive relief.

However, even assuming Republic could overcome this significant hurdle, the Company would still be prevented from obtaining injunctive relief because it has failed, once again, to allege facts sufficient to meet the jurisdictional requirements of the Act. 29 U.S.C. § 107. This is for three reasons.

First, Republic has failed to show that an injunction is necessary to prevent the Union from causing it substantial and irreparable harm. While Republic blames the Union for revenue losses resulting from its inability to service customers, this blame is misplaced. The obvious reason Republic cannot service its customers is not because of the Union, but because the Company is currently relying on a less efficient[3] pool of strikebreakers that is a fraction of the size of its permanent workforce. Without about half of the labor power, it is only natural the Company would be unable to meet the same productivity goals. This is the normal consequence of a strike. However, if Republic is concerned about the strike's effectiveness, the Union has an easy solution: return to the table and agree to a successor collective bargaining agreement.

Second, Republic has failed to show that the public officers charged with protecting its property are unable or unwilling to do so. Rather, according to the Company's own affidavits, police at all seven locations are totally in charge and have implemented rules that balance public safety, traffic conditions, the rights of the picketers, and the Company's rights, with zero arrests to boot, on either side. The issue, therefore, is not that police are unable or unwilling to take charge,

---

[3] Maria Kramer, *Video Shows Republic Services Truck on Wrong Side of VFW Parkway as Strike Continues*, NBC Boston (Aug. 14, 2025), https://www.nbcboston.com/news/local/video-shows-republic-services-truck-on-wrong-side-of-vfw-parkway-as-strike-continues/3789982/.

but rather, that Republic does not agree with the rules that the various police departments have implemented.

Third, Republic has failed to show that it lacks an adequate remedy at law. Again, Republic's issue is not with the Union but with the police departments.[4] Therefore, any remedy would not change the various police departments' picketing rules, which, depending on the city or town, permit certain intervals between exiting trucks. These rules are implemented with safety in mind.[5] Further, even if Republic's alleged damages were redressable through an injunction, Republic still retains other remedial options. It could file unfair labor practice charges with the National Labor Relations Board and, as it has done here, maintain its suit for money damages.

Finally, Section 4 of the NLA prevents courts from enjoining protected picketing and other protected-concerted activity under the National Labor Relations Act. 29 U.S.C. § 104. As the Union will fully demonstrate at hearing, Republic's allegations of unlawful conduct are false. The Union's conduct has been protected. Section 4, therefore, prohibits courts from enjoining any of its picketing activity.

Therefore, the Union urges this Court to deny Republic's latest request for injunctive relief, just as it has done twice before.

---

[4] It is noteworthy, with respect to any particular remedy the Plaintiffs are urging, that not one of the police departments is named as a defendant in this action.

[5] A cursory Google search reveals dozens of examples of picketers in other strikes that were run over by strikebreakers and other drivers. *See, e.g.,* Jamie Lareau, "UAW Striker Killed When Suspected Drunk Driver Plows Into Picket Line at Eaton Aerospace," Oct. 1, 2024, available at https://www.freep.com/story/money/business/michigan/2024/10/01/uaw-striker-killed-4-others-hurt-while-picketing-at-eaton-aerospace/75464590007/; "Drunken Replacement Worker Hits Striking Verizon Employee with Truck, Police Say," WCVB News, May 12, 2016, available at: https://www.wcvb.com/article/drunken-replacement-worker-hits-striking-verizon-employee-with-truck-police-say/8234860.

**FACTS**

The Union incorporates by reference the factual statements and affidavits previously submitted in response to the Company's two previous requests for injunctive relief. The Union notes that the Company is recycling much of its material. For example, the Company refers again to the July 23 incident in Revere that it described as a "serious incident" in its second attempt to obtain injunctive relief. The Company also alleges that one of its trucks was blocked on July 2, the second day of the strike, which is the same allegation used in its initial attempt to obtain injunctive relief. Now, based on the affidavits submitted in support of its *third* attempt seeking injunctive relief, Republic appears to be recycling its previous  failed attempts.[6] However, even accepting these incidents as true, which the Union does not concede, the Company has failed to produce evidence justifying the extraordinary relief sought.

At all relevant times, the Company has failed to make reasonable efforts to settle the dispute. The last time the parties met was on July 18, 2025, despite repeated pleas from the Union and public officials to return to the bargaining table. During negotiations that day, Republic caucused for five hours and then refused to make a single positive change to any of its proposals. Instead, incredibly, the Company made an offer that was actually *worse*. The Company's bad faith bargaining tactics that day prompted the Union to file an unfair labor practice charge, alleging violations of the National Labor Relations Act. *See* Def. Ex. 1.

As stated above, the Union is far from the only one fed up with Republic's lack of effort. Governor Maura Healey recently responded to Republic's unreasonableness in a letter that admonished the Company and implored it to get back to the table. *See* Def. Ex. 2. Healey noted

---

[6] See reference to Yogi Berra, *supra.*

that Republic had refused to even return her calls. *Id.* The Company received Healey's letter after receiving a similar letter from the entire Massachusetts Congressional Delegation. *See* Def. Ex. 3.

Of course, rather than returning Healey's calls or accepting elected leaders' advice, Republic has chosen another path: frivolous litigation. Apparently, as its exclusive bargaining strategy, Republic is hoping to wear down the Union by repeatedly forcing it to spend valuable time and resources defending this lawsuit. That Republic would expect a different result this time defies common sense when, based on the same facts, the Court has already spoken to the issue, telling the Company that:

> Even crediting all the affidavits … submitted by the Plaintiffs, **I don't think that … a requisite showing has been made as to irreparable harm and as to the fact that the police are unable to provide the necessary assistance to ensure that safety continues**… A prior restraint on speech such as this when governed by the very restrictive aspects of Section 107 result in me not being able to conclude that issuing such an order would be warranted. **There has been a loss -- a loss of goodwill. I think you made a very strong argument about that, but … I don't know that I can conclude that that is not secondary to the strike and the necessary disruption in service that is incident thereto** … [w]hile there … **there has been some allegations of illegal conduct, I am unable to conclude that it is at the behest of the union. I'm also unable to conclude that it is so widespread that an injunction in this case is warranted, and therefore I decline to issue one.** (Emphasis added.)

*See* Transcript of July 21, 2025 Motion Hearing, Dkt. 46, pp. 30-31

Finally, it must be noted that the strike has been peaceful. There have been no arrests, and after several weeks now—indeed multiple weeks after the Company last petitioned the Court— there is zero evidence that the Union is responsible for any misconduct. As noted previously, at the outset of the strike, the Union provided ground rules to picketers, which it required them to sign. Def. Ex. 6.

Throughout the entire strike, there was only one known instance of alleged picketer misconduct. Def. Ex. 4-5.  In that case, a non-member allegedly engaged in misconduct, Def. Ex.

4, in the presence of a member. Def. Ex. 5. In response, the Union took swift and immediate action to disavow the alleged misconduct. Def. Ex. 4-5. The Union informed both individuals that they were no longer welcome on the picket line, even though the member merely accompanied the non-member as she allegedly engaged in improper actions. *Id.* The letter went as far as to attach and enforce the picketing ground rules against the member, excluding him picketing for failing to stop the non-member. Def. Ex. 5-6.

Clearly, there is no basis for concluding that the Union is responsible for any of the Company's alleged harms. On this ground alone, injunctive relief should therefore be denied.

## LEGAL STANDARD

The Norris-LaGuardia Act bars courts from issuing temporary or permanent injunctions in labor disputes unless in extreme circumstances where narrow exceptions apply and employers have met the strict statutory prerequisites. 29 U.S.C. § 101 et seq.

First, Section 8 of the NLA provides that employers cannot obtain injunctive relief if they have not made "every reasonable" effort to resolve the dispute, providing:

> "No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or *who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation* or voluntary arbitration."

29 U.S.C. § 108. (Emphasis added).

Second, Section 7 deprives courts of jurisdiction to issue injunctive relief except in strict accordance with a very narrow exception, providing that:

> "No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute" unless the court makes affirmative findings of fact concerning *five jurisdictional requirements.*

29 U.S.C. § 107.

Under Section 7, the burden is upon Republic to establish by "clear evidence" each of the following: (1) that the Union committed unlawful acts and that unlawful acts will continue unless restrained; (2) that those unlawful acts caused or will cause substantial and irreparable injury to Republic's property; (3) that being denied an injunction will cause greater harm than the injunction; (4) that there is no adequate remedy at law; *and* (5) that the public officers charged with protecting the employer's property are unable or unwilling to furnish adequate protection. *Donnelly Garment Co. v. Dubinsky*, 154 F.2d 38, 45 (8th Cir. 1946).

Finally, Section 4 prohibits courts from issuing an injunction that would stop or prevent a person from engaging in protected activity, such as strike or picketing activity. 29 U.S.C. § 104.

## ARGUMENT

Republic cannot obtain injunctive relief because it has failed to make every reasonable effort to settle the dispute and because its allegations, even if true, would not satisfy the NLA's strict jurisdictional requirements. As elaborated below, the Company has failed to show misconduct traceable to the Union that has or will cause substantial irreparable harm; that the police are unable or unwilling to protect it from that harm; and that it lacks an adequate remedy at law to recover for that harm. Finally, Section 4 of the NLA precludes from enjoining any of the Union's activity. Therefore, Republic's third request for injunctive relief, just like its first and second, should be denied.

## I.   INJUNCTIVE RELIEF SHOULD BE DENIED AS A MATTER OF LAW BECAUSE REPUBLIC FAILED TO MAKE 'EVERY REASONABLE EFFORT TO SETTLE SUCH DISPUTE.'

The Norris La-Guardia Act provides that "[n]o restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to

settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108.

In this case, Republic has refused to make reasonable attempts to settle the instant labor dispute. Specifically, the Company has been unwilling to meet with the Union to negotiate a successor collective bargaining agreement since July 18 —32 days prior to this filing. Even when it met with the Union, the Company's participation amounted to "surface bargaining" (giving the appearance of bargaining in good faith but with no desire to reach an agreement), taking a five-hour caucus and then upon return refusing to change any of its proposals. The Company's bad faith bargaining prompted the Union to file an unfair labor practice charge against it, alleging violations of Section 8(a)(1) and (5) of the National Labor Relations Act. *See* Ex. 1.

Republic even ignored a letter signed by all eleven members of the Massachusetts Congressional Delegation and, more recently, Governor Maura Healey's attempts on August 11, 2025, to urge Republic to get to the bargaining table. Admonishing the Company, Governor Healey wrote, in part, "[t]he fact that you haven't returned my calls is a reflection of your unacceptable approach to this urgent matter," adding: "The time for delay and posturing is over. It is time to resolve this - now. *Republic must return to the bargaining table immediately and negotiate in good faith with the workers and their representatives*." *See* Ex. 2.  (Emphasis added).

The case law is clear that a company's failure to make every reasonable effort to settle a labor dispute is fatal to its obtaining injunctive relief. *Donnelly Garment Co. v. International Ladies' Garment Workers' Union*, 99 F.2d 309 (8th Cir.), cert. denied, 305 U.S. 662 (1938); *L. L. Coryell & Son v. Petroleum Workers Union*, 19 F. Supp. 749 (D. Minn. 1936); *Terrio v. S. N. Nielsen Constr. Co.*, 30 F. Supp. 77 (D. La. 1939); *People ex rel. Sandnes v. Sheriff of Kings County*, 299 N.Y.S. 9 (N.Y. Sup. Ct. 1937); *Stalban v. Friedman*, 259 A.D. 520, 19 N.Y.S.2d 978 (N.Y.

App. Div. 1940); *Brayer v. Charton*, 37 N.Y.S.2d 326 (N.Y. Sup. Ct. 1942); *Bulkin v. Sacks*, 31 Pa.

D. & C. 501, 1 Lab. Cas. (CCH) ¶ 18158 (Pa. C.P. 1938).

Since July 18, 2025, Republic has not made *any* effort to settle the dispute with the Union.

Accordingly, Republic's request for injunctive relief should be denied.

## II. INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE REPUBLIC CANNOT SHOW IRREPARABLE HARM TRACEABLE TO THE UNION'S UNLAWFUL CONDUCT.

Section 7 of the NLA strips federal courts of jurisdiction to issue injunctions in labor

disputes unless, among other requirements, the complainant has shown by clear evidence "that

unlawful acts have been threatened and will be committed *unless* restrained or have been

committed and will be continued *unless* restrained." 29 U.S.C. § 108 (emphasis added). The

Company must show "that substantial and irreparable injury to complainant's property will

follow." *Id.* However, "no injunction or temporary restraining order shall be issued on account of

any threat or unlawful act excepting against the person or persons, association, or organization

making the threat or committing the unlawful act or actually authorizing or ratifying the same after

actual knowledge thereof." *Id.*

Here, the Company has failed to show that the Union has engaged in any material unlawful

activity, or that any unlawful activity has caused it harm, and that that harm will continue unless

this Court issues an injunction.

### A. Wait Times

Republic's Third Renewed Motion regurgitates the same baseless allegations that were

previously rejected. One of the main alleged harms, however, appears to be the "lost use and

enjoyment of its property." The Company apparently claims that it is suffering substantial

irreparable harm because its trucks are required to wait mere minutes based on their location before

exiting or entering transfer stations. Third Renewed Motion at 8. The reason for the wait is because

local police have established strike protocols that mandate different intervals of time between exiting and entering vehicles at each location where picketing occurs.

Although the Company mischaracterizes these protocols as "special agreements" between Union officials and police, these rules are not the byproduct of some sort of collusion with Union, as the Company irresponsibly suggests. Rather, the only record evidence of communication between police and a party to the strike about the strike protocols shows negotiations between Republic Operations Manager James Martin and a Roxbury police captain. Dkt. 59, Affidavit of James Martin, Exhibit A. It is not the Union's fault that the Company was unable to persuade police to shorten wait times.

Despite the Company's feigned horror, police-issued restrictions like this are standard when it comes to protests and picketing. Under the First Amendment, it is foundational that police departments may implement "time, place, and manner" restrictions to protect public safety while respecting the right to speech. *Young v. Am. Mini Theatres*, 427 U.S. 50, 63 n.18 (1976) ("Reasonable regulations of the time, place, and manner of protected speech, where those regulations are necessary to further significant governmental interests, are permitted by the First Amendment.") (internal citations omitted); see also *NAACP v. Claiborne Hardware Co*., 458 U.S. 886 (1982) (recognizing the government's strong interest in regulating certain forms of economic activity, including secondary boycotts and picketing by labor unions).

In practice, police departments have exercised such discretion in implementing restrictions to preserve the peace and protect public safety during strikes. These restrictions are necessary to avoid the sort of tragedy and disruption that has occasioned different picket lines over the years.[7] The Republic strike is no exception.

---

[7] *See* fn. 5, supra.

In successfully managing the picket lines during the Republic strike, police from different departments have implemented different restrictions based on their expert assessment of the circumstances (e.g., location, traffic, number of people, and department). This is undisputed.

In fact, Republic attached a document to one of its affidavits, purporting to be the strike protocol for picketing at the Roxbury Transfer Station, that shows just that. Dkt. 59, Affidavit of James Martin, Exhibit A. The express purpose of the restrictions, according to the exhibit, is to "ensure the safe, legal, and orderly flow of truck traffic in and out of Republic Yard while balancing the right of striking workers to lawfully protest." *Id*.

Therefore, Republic cannot enjoin the Union because the Union's involvement, if any, amounts merely following the lawful orders of police.

Even assuming these restrictions were "unlawful," however, the Company's more fundamental problem is that it is seeking relief from the wrong party. An injunction against the Union would not eliminate restrictions issued by police.

If the Company wants relief from the police departments ordering its exiting strikebreakers to wait mere minutes in the interest of public safety and free speech, it will need to obtain that relief from those departments directly, not the Union. However, by that specious logic, the Company might also want to sue each of the cities and towns for having to stop at stop signs and red lights, and for not being able to mow over crossing guards in cross walks, because those restrictions similarly restrict the use of Republic's property in the interest of public safety.

### B. Unable to Meet Demand

The Company also erroneously faults the Union for not being able to meet its customers' demand and provide services it promised to provide. The reasons that the Company cannot meet customers' needs, however, is because it is relying upon far fewer replacement drivers to do the

same work.[8]  These replacement drivers are also less efficient than Republic's regular workforce.[9]
It is inconceivable to think that the Union is to be held responsible for Republic's economic losses
due to its inability to satisfy its obligations under its contracts with the fourteen cities and towns.
This is just the natural and probable consequence of a strike.[10]

### C.  Reputational Harm

The Company alleges without any foundation that the publicity of the strike has tarnished
its reputation and harmed future business. This harm is not only speculative but, if true, caused by
its own doing.  Indeed, the Company has refused to come to the table to bargain a fair contract
suffering negative press, while the Governor and Congressmen and Congresswomen have called
on Republic to do so as members of the public have watched their trash pile up. *See* 28 U.S.C. §
108. The Company's refusal to meet and negotiate since July 18 is the real cause of the Company's
economic distress. Truly, Republic made its bed and now must lie in it.

As one court has noted, equity should not intervene when injury is not probable. *Donnelly
Garment Co. v. Dubinsky*, 55 F. Supp. 587 (D. Mo. 1944), aff'd, 154 F.2d 38 (8th Cir. 1946). Based
on these facts, injury is not only improbable but implausible, as Plaintiffs have failed to allege an
injury traceable to the Union. Therefore, any request for injunctive relief should be denied.

---

[8] On any given day, Republic is only able to employ enough replacement drivers and other personnel to service
approximately 50 percent of its pre-strike routes. *See* Lavery Aff., pp. 3-4.

[9] See fn. 3, *supra.*

[10] Republic notes that several of its customers have sued based on its failure to perform. Republic also notes that
this lawsuit is pending despite a Superior Court Judge expressing her inability to provide relief to the Plaintiffs.
Therefore, the lawsuit filed in Superior Court represents a speculative harm at best, not the sort of substantial
irreparable harm required to support the extraordinary relief requested.

### III. INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE REPUBLIC FAILED TO SHOW POLICE ARE UNABLE OR UNWILLING TO FURNISH ADEQUATE PROTECTION.

Courts will not issue an injunction in a labor dispute unless there is clear evidence that the local police or authorities cannot or will not provide adequate protection. *Heintz Mfg. Co. v. United Auto Workers*, 20 F. Supp. 116 (D. Pa. 1937) (where evidence shows that police are maintaining at all times a force of officers sufficient to preserve order and to protect property, court cannot make finding that those officers are unable or unwilling to furnish adequate protection); *Cimarron Coal Corp. v. United Mine Workers*, 416 F.2d 844, (6th Cir. 1969), cert. denied, 397 U.S. 919 (1970)(no jurisdiction to enjoin labor dispute where record fails to indicate any breakdown of local or state law enforcement); *Carter v. Herrin Motor Freight Lines, Inc.,* 131 F.2d 557 (5th Cir. 1942) (court cannot enjoin strike even where occasioned by acts of violence unless police advise that they cannot or will not control the situation or try and fail).

In their Third Renewed Motion, Plaintiffs malign the police, stating that police cannot and will not help them. This assertion is based solely on police issuing orders requiring trucks to wait a certain number of minutes prior to exiting and entering certain facilities. These wait times are specific time, place, and manner restrictions narrowly tailored to serve an important police interest. They are a balancing act between and among First Amendment rights, property rights, and public safety. They are lawful, and they are routine in protest and picketing situations. However, even if these wait times were unreasonable, as the Company alleges, the Union did not create them, and so an injunction against the Union would not eliminate them.[11]

---

[11] The speculative hearsay that the Union somehow colluded across multiple districts and police departments to establish these wait times and is therefore somehow implicated is not only incorrect, but absurd, insulting to police, and unsupported by the Company's own evidence.

Moreover, these waiting periods contradict Republic's claim that police are unwilling or unable to control the situation. Rather, the waiting periods show just the opposite: police are present, engaged on the picket lines, and have issued rules designed to minimize unrest while protecting speech and property. Republic's own affidavits similarly demonstrate a sufficient police presence. An in junction is unwarranted. *See, e.g., Cupples Co. v. AFL*, 20 F. Supp. 894 (D. Mo. 1937) (No lack of protection from public officers is established where city has been zealous in furnishing police protection even to point of patrolling premises and supplying escorts for employees).

Based on the clear presence of police, and as this Court astutely noted in the July 21 hearing,[12] Republic's real issue seems to be, not that police are unable or unwilling to help, but simply that Republic does not agree with the decisions being made by the several police departments. However, the Company's frustration with the several police departments is not a valid basis for seeking an injunction – especially against the Union.[13]

Similarly, the Company points to the example of July 23, 2025 – already described in its second request for an injunction as the "serious incident." Republic uses July 23 as anecdotal proof that police protection doesn't exist. Again, the Company's own evidence shows that to be false. Instead, the evidence establishes that police on July 23 intervened and successfully de-escalated the situation. *See* Third Renewed Motion at 6.[14]

Accordingly, injunctive relief should be denied.

---

[12] Transcript of Motion Hearing, DKT 46, PP. 10, ¶ 7-11 ("[M]y first concern is … that the remedy should at least in the first instance be to the police rather than to this Court.").

[13] *See, e.g., International Ass'n of Bridge, Structural & Ornamental Iron Workers v. Pauly Jail Bldg. Co.,* 118 F.2d 615 (1941) (Expressions of opinion though inaccurate and even misrepresentative in character cannot be permitted to be made basis for injunctive process in labor dispute; accusations of unfairness against employer normally will fall within this category).

[14] The Union denies the Company's version of events and will correct the record during the evidentiary hearing.

## IV. INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE REPUBLIC FAILED TO SHOW THAT IT LACKS AN ADEQUATE LEGAL REMEDY.

Federal district court exceeds their jurisdiction in granting injunctive relief when it fails to find that complainant in labor dispute has no adequate remedy at law, as required by 29 USCS § 107(d). *Lauf v. E. G. Shinner & Co.*, 303 U.S. 323 (1938). Where the harm is capable of being compensated in damages, "the extraordinary remedy of an injunction" is not required. *Richard H. Oswald Co. v. Leader*, 20 F. Supp. 876, 877 (E.D. Pa. 1937).

Here, the Company really takes issue with wait times established by the several police departments and alleged vague and ambiguous unlawful conduct that it attributes to the Union. If this is the case, the Company will be able to recover against the Union for its portion of liability, if any. Therefore, an injunction would be unnecessary even assuming facts and events favorable to the Company.

Accordingly, injunctive relief is improper.

## V. INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE IT SEEKS TO ENJOIN PROTECTED ACTIVITY.

Section 4 of the NLA further strips federal courts of jurisdiction to issue an injunction in a labor dispute. While the above restrictions were procedural, this restriction is based on the activity being enjoined. Specifically, Section 4 states:

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:
>
> (a) Ceasing or refusing to perform any work or to remain in any relation of employment;
>
> (b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;

(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

(d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;

(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;

(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

29 U.S.C. § 104.

In addition to all the reasons mentioned above, the Company's request for an injunction must be denied to the extent it seeks to prevent individuals from participating in or assisting the activities above. The Company's proposed order is clearly a thinly veiled attempt to leverage its position at the bargaining table, assuming it ever comes back to it, and to prohibit protected activity. The request cannot be granted based on Section 4. Even if the allegations were true, there is no proof that the Union ratified or participated in unlawful conduct or conduct that is not protected. *See, e.g., NLRB v. Abex Corp.*, 459 F.2d 745 (D.C. Cir. 1972) (an employee's use of profane language on the picket line was still protected under the NLRA) *NLRB v. Thor Power Tool Co.,* 351 F.2d 584 (7th Cir. 1965) (profanity directed at non-strikers was found to be protected, absent threats); *Service Employees Local 50*, 198 NLRB 10 (1972) (Union did not violate 8(b)(1)(A) despite the momentary blocking of trucks entering and leaving, where no one was injured, nothing

was thrown, no one was prevented from going to work or leaving, and no vehicle was harmed or excluded from the premises).

<b>CONCLUSION</b>

Based on the facts and legal arguments presented in this Opposition, and on the entire record, the Union asks that the Court DENY Republic's third request for injunctive relief.

Respectfully submitted,

**TEAMSTERS LOCAL 25**

Through its counsel,

/s/ Nicholas S. Balatsos

Nicholas S. Balatsos, Esq.
Feinberg, Dumont & Brennan
177 Milk Street, Suite 300
Boston, MA 02109
nsb@fdb-law.com

/s/ Michael A. Feinberg

Michael A. Feinberg
Feinberg, Dumont & Brennan
177 Milk Street
Boston, MA 01209
maf@fdb-law.com

Dated: August 19, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, Nicholas S. Balatsos, Esq. hereby certify that on this 19th day of August 2025, I caused a copy of the foregoing documents to be sent electronically, through the ECF system, to the registered participants in this case, as identified on the Notice of Electronic Filing (NEF).

*/s/ Nicholas Balatsos*
Nicholas S. Balatsos

Dated: August 19, 2025